UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARK MANELLO,

                              Plaintiff,                    OPINION AND ORDER

            -against-                                       11-CV-0243 (SJF)

                                                            **FILED**
NATIONWIDE MUTUAL INSURANCE                                 IN CLERK'S OFFICE
COMPANY,                                                    U S DISTRICT COURT E D N Y

                              Defendant.                    ★   SEP 0 4 2012   ★
-------------------------------------------------------------X
FEUERSTEIN, United States District Judge:                   **LONG ISLAND OFFICE**

On January 14, 2011, plaintiff Mark Manello ("plaintiff") filed this action against

defendant Nationwide Mutual Insurance Company ("defendant") alleging employment

discrimination based upon sex and disability, and retaliation, in violation of Titles I and II of the

Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101, *et seq.*; Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and New York State

Executive Law ("NYSHRL") §§ 290, *et seq.* Defendant now moves pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure to dismiss: (1) the complaint as time-barred; (2) plaintiff's

second and third claims, alleging violations of the ADA, for failure to exhaust administrative

remedies; and (3) plaintiff's claim that defendant was required to inform him of a second job

posting for a technical clerk position for failure to state a claim for relief. For the reasons stated

herein, defendant's motion is granted in part and denied in part.

## I. BACKGROUND

### A. Factual Allegations[1]

Plaintiff is a male who commenced employment with defendant as a "MD Master Claims Representative" ("claims representative") on May 19, 1997. (Complaint [Compl.], ¶¶ 5, 10).[2] The written job description applicable to plaintiff's claims representative position included the ability: (1) "to make physical inspections of accident scenes and property loss sites;" (2) "to climb ladders, balance at various heights, stoop[,] bend and/or crawl to inspect vehicles and structures;" and (3) "to work out-of-doors in all types of weather." (Compl., ¶ 11).

On or about June 19, 2007, plaintiff injured his lower back during the course of his employment. (Compl., ¶ 12). On July 17, 2007, Dr. Kenneth S. Glass ("Dr. Glass"), an orthopedist, diagnosed plaintiff's complaint as a lumbar sprain. (Compl., ¶ 13). On August 8, 2007, Dr. Glass added radiculitis to the diagnosis and limited plaintiff's work activities to exclude bending, stooping and climbing. (Compl., ¶ 13). An MRI of plaintiff's lumbar spine, performed on August 18, 2007, revealed a moderate to large left paracentral disc herniation at L5-S1 impinging on the left S1 nerve route. (Compl., ¶ 14). In reports dated August 14, 2007, September 6, 2007 and December 14, 2007, Dr. Glass concluded that plaintiff's lower back injury prevented him from performing his claims representative duties and from returning to work. (Compl., ¶¶ 13, 15, 17).

---

[1] The factual allegations are taken from the complaint and are assumed to be true for purposes of this motion only. They do not constitute findings of fact by the Court.

[2] The complaint omits paragraphs 7, 8, 9, and 16. All references to the paragraph numbers correspond to the paragraph numbers in the complaint.

Plaintiff alleges that on August 23, 2007, defendant notified him that his absence from work commencing on August 14, 2007 qualified him for protection under the Family Medical Leave Act ("FMLA"). (Compl., ¶ 24). By letters dated September 10, 2007 and December 7, 2007, defendant confirmed that due to plaintiff's absence beginning on August 22, 2007, he had been certified to receive benefits under defendant's Short Term Disability Income ("STDI") benefits program for a period of six (6) months based upon the diagnoses of a lumbar sprain and herniated disc. (Compl., ¶ 25). Plaintiff received STDI benefits without interruption for the entire six (6) month period. (Compl., ¶ 25).

Plaintiff alleges that by memorandum dated November 13, 2007, Scott Lange ("Lange"), defendant's AHS case manager to plaintiff, advised him that he had exhausted his leave under the FMLA and that "if he continued on short-term disability for six months without returning to work, his employment might be terminated." (Compl., ¶ 26).

On November 29, 2007, plaintiff, who had completed or was about to complete a juris doctorate program and had interned in an attorney's office from November 2006 to August 2007, posted an application for an open senior paralegal position with defendant's trial division office, but was not offered the position. (Compl., ¶ 33). According to plaintiff, the position was offered to a female, Kelly O'Brien ("O'Brien"), "whose highest level of education completed was a certification from New York Paralegal School," (Compl., ¶ 33), and at the time his application was rejected, "the majority of paralegals assigned to [defendant's] Trial Office were female," (Compl., ¶ 33).

On December 4, 2007, plaintiff sent an e-mail to Alain Romulus ("Romulus"), from defendant's human resources department, complaining that Suzie Snyder ("Snyder"), the nurse

manager assigned to his STDI benefits case, was retaliating against him "in response to his disability" by: (1) "threaten[ing] to cut-off his [STDI] benefits if supporting medical information was not received that day * * * despite faxing [his] physician the necessary forms to be completed less than 7 to 10 days before they were due even though she had been repeatedly advised that [his] physician required at least that long to complete and submit them[;]" and (2) failing to mention during a telephone conversation with him that her supervisor was listening in on the conversation. (Compl., ¶ 35).

On December 14, 2007, plaintiff sent another e-mail to Romulus "expressing his concern over the manner in which his application for the Senior Paralegal position was considered and rejected" because the reason for the rejection of his application, i.e., his lack of experience with PIP matters, "was perplexing given that the job posting for the position did not mention the need for th[at] kind of experience." (Compl., ¶ 36).

On December 20, 2007, plaintiff sent a third e-mail to Romulus "voic[ing] his frustration with the entire manner in which his [STDI benefits] claim and requests for accommodations had been handled;" accusing defendant of retaliating against him for his requests for an accommodation of his disability "by (1) applying a hypertechnical review of his qualifications as set forth in his resume; (2) posting an inaccurate description for the Senior Paralegal position; [and] (3) stonewalling his request for an accommodation by repeatedly requiring [him] to obtain additional information from his doctor[;]" and requesting that defendant investigate his complaints "and take necessary action to extend him a reasonable accommodation of his disability." (Compl., ¶ 37).

Barb DeShetler ("DeShetler"), a registered nurse with defendant, sent plaintiff an e-mail

4

dated December 27, 2007 reiterating what Romulus had previously told plaintiff, i.e., that defendant would not offer any modifications to plaintiff's claims representative position until his doctor released him to return to work and provided a detailed report regarding his restrictions. (Compl., ¶¶ 37-38). Thereafter, defendant was provided notes from Dr. Glass, dated January 2, 2008 and January 14, 2008, respectively, indicating that plaintiff could return to work but was restricted to a sedentary "desk job" position and that such restriction was permanent. (Compl. ¶¶ 18, 19, 39).

On January 4, 2008, plaintiff applied for a technical clerk position in defendant's Woodbury office, which had been posted by defendant on December 21, 2007 with a "target fill" date of February 4, 2008. (Compl., ¶ 34). According to plaintiff, the job duties of a technical clerk position were "largely ministerial; i.e., maintaining records, compiling and distributing standard reports, assisting in answering phones, taking messages, etc." (Compl., ¶ 34). Defendant cancelled the job posting on February 4, 2008 "due to change in business needs and budgetary issues." (Compl., ¶ 34). However, according to plaintiff, "around the same time" defendant initiated a second posting for a technical clerk position without notifying him that the position was available or considering him for the position and that position "was subsequently filled by someone other than plaintiff." (Compl., ¶ 34).

By letter dated January 22, 2008, DeShetler advised plaintiff that "there [were] no vacant Claims positions in the region for which [he] [was] qualified that would meet [his] modification request of working in a sedentary position on a permanent basis." (Compl., ¶ 40).

On January 25, 2008, defendant posted a job opening for plaintiff's claims representative position. (Compl., ¶ 27).

By letter dated February 4, 2008, Kari Bruning ("Bruning"), senior analyst for defendant, advised plaintiff that if he did not return to work by February 29, 2008, his employment would be terminated "on the basis that he had been continuously disabled for 6 months." (Compl., ¶ 28).

On February 29, 2008, defendant terminated plaintiff's employment. (Compl., ¶ 29).

B.    Procedural History

On or about November 3, 2008, plaintiff filed a charge of discrimination based on disability and sex, and retaliation, against defendant with the United States Equal Employment Opportunity Commission ("EEOC"), which then filed the charge with the New York State Division of Human Rights ("NYSDHR"). (Compl. ¶ 41). The NYSDHR took no action with respect to the charge, but the EEOC issued a right to sue letter on December 6, 2010, after its efforts at conciliation failed. (Compl. ¶¶ 42-44).

On January 14, 2011, plaintiff filed a complaint against defendant in this Court, alleging that defendant: (1) violated Titles I and II of the ADA and the NYSHRL by failing to reasonably accommodate his disability by (a) not permitting him to work a modified or sedentary assignment in defendant's claims department (first claim for relief [ADA] and eighth claim for relief [NYSHRL]), (b) not hiring him for the senior paralegal position (second claim for relief [ADA] and ninth claim for relief [NYSHRL]) or either of the technical clerk positions (third claim for relief [ADA] and tenth claim for relief [NYSHRL]), or (c) not allowing him the opportunity to request and receive additional leave time beyond the accrued leave periods and leave periods designated under the FMLA and STDI benefits program (fourth claim for relief [ADA] and eleventh claim for relief [NYSHRL]); (2) violated Titles I and II of the ADA and the NYSHRL

by retaliating against him for requesting accommodations of his disability and for complaining of disability-based discrimination (fifth claim for relief [ADA] and twelfth claim for relief [NYSHRL]); and (6) violated Title VII and the NYSHRL by discriminating against him based upon his gender by virtue of its failure to hire him for the senior paralegal position (sixth claim for relief [Title VII] and thirteenth claim for relief [NYSHRL]) and for either of the two (2) technical clerk positions (seventh claim for relief [Title VII] and fourteenth claim for relief [NYSHRL]). Plaintiff seeks, *inter alia*, compensatory and punitive damages in the total amount of one hundred million five hundred dollars ($100,000,500.00); attorney's fees in the amount of one million dollars ($1,000,000.00), plus costs and expenses of the action; an order permanently enjoining defendant "from discriminating against [him] in any manner prohibited by Title I and Title II of the ADA, and [NYSHRL];" and an order directing defendant (a) to hire him "into a position identical to or substantially similar to the one he occupied prior to the termination of his employment, with full salary, seniority, and benefits, retroactive to the constructive termination of her [sic] employment" and (b) "to compensate, reimburse and make whole the plaintiff for the entire benefits [he] would have received but for the discriminatory acts of defendant, including but not limited to back pay, benefits, training, promotions, front pay and seniority * * * [and] for all insurance, pension and retirement benefits [he] would have received but for the acts of defendant complained of." (Compl., at 29-32).

Defendant waived service of process on April 8, 2011 and now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss: (1) the complaint as time-barred; (2) plaintiff's second and third claims for failure to exhaust administrative remedies; and (3) plaintiff's claim that defendant was required to inform him of a second job posting for a technical

clerk position for failure to state a claim for relief.

II.    DISCUSSION

    A.    Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is

plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167

L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only

give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests."

Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "A pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

will not do.'" Aschroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868

(2009)(quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly,

550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard

requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at

678, 129 S.Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the

claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences

in favor of the plaintiff. See McGarry v. Pallito, 687 F.3d 505, 510 (2d Cir. 2012); Rescuecom

Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009). The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

Since the EEOC charge is a public document filed in an administrative proceeding, and is integral to plaintiff's Title VII and ADA claims, the charge is properly considered on this motion. See Morris v. David Lerner Assocs., 680 F.Supp.2d 430, 436 (E.D.N.Y. 2010)); Muhammad v. New York City Transit Auth., 450 F.Supp.2d 198, 204-05 (E.D.N.Y. 2006).

    B.    ADA and Title VII Claims

        1.    Timeliness of Administrative Charge

"As a prerequisite to filing suit under Title VII [and the ADA], a private plaintiff must first file a timely charge with the EEOC." Chin v. Port Authority of New York & New Jersey, 685 F.3d 135, 146 (2d Cir. 2012); see Lewis v. City of Chicago, Ill., 130 S. Ct. 2191, 2196-97, 176 L. Ed. 2d 967 (2010); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122, 12 S.Ct. 2061, 153 L.Ed.2d 106 (2002). 42 U.S.C. § 2000e-5(e)(1) provides, in pertinent part, as follows:

> "A charge under this section [Title VII] shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful

9

employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency."

42 U.S.C. § 12117(a) provides, in pertinent part:

"The powers, remedies, and procedures set forth in section[] * * * 2000e-5 [Title VII], * * * of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment."

New York is a "deferral state," i.e., it has an agency with the authority to address and remedy charges of discriminatory employment practices, Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325 (2d Cir. 1999), and, therefore, the longer three hundred (300)-day period is applicable "where an employee initially files a grievance with that [agency]." Chin, 685 F.3d at 157 n. 11. Since the EEOC referred plaintiff's charge to the NYSDHR and, therefore, "the charge could not be regarded as formally filed with the EEOC until after the NYSDHR terminated its proceedings or sixty days had passed," Tewksbury, 192 F.3d at 326, 327; see 42 U.S.C. § 2000e-5(c), the charge is deemed to have been "initially" filed with the NYSDHR and, thus, subject to the longer three hundred (300)-day period. Tewksbury, 192 F.3d at 326, 327. Accordingly, in order to file claims for unlawful discrimination or retaliation under Title VII and the ADA, plaintiff was required to file an administrative charge of discrimination or retaliation within three hundred (300) days of the alleged discriminatory or retaliatory acts. See Ledbetter v.

10

Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S.Ct. 2162, 2167, 167 L.Ed.2d 982 (2007), overturned in part by Pub. L. No. 111-2, 123 Stat. 5 (amending 42 U.S.C. § 2000e-5(e) with respect to claims of discriminatory compensation); McPherson v. New York City Department of Education, 457 F.3d 211, 213 (2d Cir. 2006).

The EEOC charging period is triggered when a "discrete discriminatory [or retaliatory] act occurred," Morgan, 536 U.S. at 113, 12 S.Ct. 2061, and "[t]he timeliness of a discrimination [or retaliation] claim is to be measured from the date the claimant had notice of the allegedly discriminatory [or retaliatory] action." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996); see also Singh v. Wells, 445 Fed. Appx. 373, 376-77 (2d Cir. Oct. 20, 2011); Morse v. University of Vermont, 973 F.2d 122, 125 (2d Cir. 1992).

Although "under the continuing violation exception to the Title VII [and ADA] limitations period, if a Title VII [or ADA] plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone," Chin, 685 F.3d at 155-56 (alteration, quotations and citations omitted), "'discrete acts' of discrimination * * * do not implicate the continuing-violation doctrine." Id. at 156. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113, 12 S. Ct. 2061. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id.

Discrete acts of discrimination or retaliation include, *inter alia*, termination and a refusal to hire. See, e.g. Morgan, 536 U.S. at 114, 12 S. Ct. 2061; Chin, 685 F.3d at 157; McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010). Such discrete acts "which fall outside the

limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." Chin, 685 F.3d at 157. "[A]n allegation of an ongoing discriminatory policy does not extend the statute of limitations where the individual effects of the policy that give rise to the claim are merely discrete acts." Id.

Plaintiff alleges that he filed his charge of discrimination with the EEOC on November 3, 2008. Thus, any claim based upon discrete acts of discrimination or retaliation occurring prior to January 7, 2008 are time barred, including: (a) the ADA and Title VII claims alleging discrimination based upon the failure to hire him for the senior paralegal position[3] (second and sixth claims for relief), (b) the ADA claim alleging a failure to accommodate by virtue of not providing plaintiff with the opportunity to request and receive additional leave (fourth claim for relief), since plaintiff was notified on November 13, 2007 that his FMLA leave had been exhausted, (c) the ADA claim alleging retaliation based upon allegations that defendant "(1)

_____

[3] Although defendant contends that there is no allegation in the complaint indicating that he knew prior to January 8, 2011 that a female had been hired to the senior paralegal position, (Plf. Mem., at 18), it is clear from the face of the complaint that plaintiff knew no later than December 14, 2007, when he sent an e-mail to Romulus, that he had not been hired from the senior paralegal position. (Compl., ¶ 36). Moreover, plaintiff alleges that at the time his application for the senior paralegal position was rejected, which occurred on or prior to December 14, 2007, "the majority of paralegals assigned to [defendant's] Trial Office were female." (Compl., ¶ 33). Accordingly, plaintiff had enough knowledge of "the critical facts of injury and causation," Singh, 445 Fed. Appx. at 377, for both his Title VII and ADA causes of action (second and seventh claims for relief) to have accrued on the date that he learned that his application for the senior paralegal position had been rejected, sometime on or prior to December 14, 2007. See Miller v. International Telephone and Telegraph Corp., 755 F.2d 20, 24 (2d Cir. 1985) (holding that discrimination claims accrue "upon the employer's commission of the discriminatory act and are not tolled or delayed pending the employee's realization that the conduct was discriminatory" absent extraordinary circumstances justifying equitable tolling).

appl[ied] a hypertechnical review of his qualifications [for the senior paralegal position]; (2) post[ed] an inaccurate description for the Senior Paralegal position; (3) stonewall[ed] his requests for an accommodation by repeatedly requiring plaintiff to obtain additional information from his doctor * * *; [and] (4) fail[ed] to provide a substantive response to plaintiff's email of December 20, 2007," (Compl., ¶ 71), (fifth claim for relief); and (d) any ADA claim for failure to accommodate alleging discrete acts occurring prior to January 7, 2008 (first claim for relief).

However, contrary to defendant's contention, the November 13, 2007 memorandum from Lange, advising plaintiff that his employment "might" be terminated if he continued on short-term disability for six months without returning to work, (Compl., ¶ 26), did not start the limitations period running with respect to plaintiff's actual termination. Plaintiff was not notified that his employment was terminated until February 29, 2008 and, thus, his EEOC charge was timely filed with respect to that discrete act of defendant.

Plaintiff's EEOC charge was also at least arguably timely with respect to: (1) his ADA claim alleging a failure to accommodate his disability by permitting him to work a sedentary assignment, since he was not notified until January 22, 2008 that there was no such accommodation available to him; and (2) his claims based upon the failure to hire him to either of the technical clerk positions, since plaintiff may not have been notified of the refusal to hire him for those position until February 8, 2008, when the first position was relinquished, or thereafter.

The limitations period for filing an administrative charge is not jurisdictional and, like a statute of limitations, is subject to waiver, estoppel and equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982); Zerilli-Edelglass v.

13

New York City Transit Authority, 333 F.3d 74, 80 (2d Cir. 2003). "[E]quitable tolling is only appropriate in rare and exceptional circumstances * * * in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass, 333 F.3d at 80 (alterations, quotations and citations omitted). "To merit equitable relief, a plaintiff must have acted with reasonable diligence during the time period she seeks to have tolled." Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 112 (2d Cir. 2008) (quotations and citation omitted). Based upon the allegations in the complaint, equitable tolling of the limitations period is not warranted in this case. Accordingly, the branch of defendant's motion seeking dismissal of plaintiff's complaint as time barred is granted to the extent that plaintiff's second, fourth and sixth claims for relief are dismissed in their entirety; plaintiff's fifth claim for relief is dismissed in its entirety except to the extent that it is based upon plaintiff's termination; and plaintiff's first claim for relief is dismissed to the extent that it is based upon discrete acts of discrimination occurring prior to January 7, 2008, for plaintiff's failure to timely file an administrative charge, and that branch of defendant's motion is otherwise denied.

2.    Exhaustion of Administrative Remedies

Defendant contends that plaintiff failed to exhaust his administrative remedies with respect to his second and third claims alleging that defendant failed to accommodate his disability, in violation of the ADA, by failing to hire him for the senior paralegal position or either of the two (2) technical clerk positions because he did not specifically raise those claims in his EEOC charge.

In his EEOC charge, plaintiff alleged, *inter alia*, that he was denied the senior paralegal,

and two (2) clerical positions, "because [he] was told that [he] was not qualified [and] [t]hat the occupants of th[o]se positions were all female, and that [he] was denied them made [him] believe that [he] was not hired because of [his] gender." In addition, plaintiff alleged:

> "In June 2007, while working as a claims adjuster, I was injured on the job. Per my doctor's instructions, I took a six month leave of absence. Per the FMLA, [defendant] permitted me 3 months, and told me they may give me more time than that. After the three months had elapsed, [defendant] warned me that I would be terminated if I couldn't to [sic] return to work after six months from the date my leave began. During the period of leave, I was in communication with [defendant], relaying notes to them from my physician that released me to work, provided that I was accommodated with a sedentary position. [Defendant] continued to ask me for further documentation, which I provided.
>
> I felt as though [defendant] was discriminating against me in not wanting to grant me an accommodation, and the manner in which this communication was conducted, which was harassing, and about which I made a complaint to Human resources. Following this complaint, I was retaliated again [sic] in further harassment. After six months of leave, I was terminated.
>
> I believe that I have been discriminated against because of my disability, in that [defendant] failed to accommodate me, and terminated me for taking what they deemed excessive leave, as well as for making a complaint."

(EEOC Charge, Def. Mem., Ex. A).

Both Title VII and Title I of the ADA require a plaintiff to exhaust all available administrative remedies prior to commencing an employment discrimination action in federal court. See Hoffman v. Williamsville Sch. Dist., 443 Fed. Appx. 647, 649 (2d Cir. Oct. 31, 2011) ("As with Title VII claims, plaintiffs asserting ADA claims must exhaust all available administrative remedies."); Williams v. New York City Housing Authority, 458 F.3d 67, 70 (2d Cir. 2006) ("Exhaustion is ordinarily 'an essential element' of a Title VII claim."); Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint

with the EEOC."); see also Curto v. Edmundson, 392 F.3d 502, 503 (2d Cir. 2004) (affirming dismissal of the plaintiff's ADA claim because there was no evidence in the record that the plaintiff had exhausted administrative remedies prior to filing the ADA claim in federal court). "The purpose of th[e] [administrative] exhaustion requirement is 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'" Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998) (quoting Stewart v. U.S. I.N.S., 762 F.2d 193, 198 (2d Cir. 1985)).

Claims that were not asserted in an EEOC charge may be pursued in a federal action only if they are "reasonably related" to those that were filed with the agency. Ximines v. George Wingate High Sch., 516 F.3d 156, 158 (2d Cir. 2008) (per curiam); Williams, 458 F.3d at 70; Deravin, 335 F.3d at 200. There are three (3) types of "reasonably related" claims: (1) claims that "fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) claims that allege retaliation for filing an EEOC charge; and (3) claims that allege "further incidents of discrimination carried out in [precisely] the same manner alleged in the EEOC charge." Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003) (quoting Butts v. City of New York Dep't of Hous. Pres. and Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1993), superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998)); see also Williams, 458 F.3d at 70, 70 n.1. In determining whether claims "fall within the scope of the EEOC investigation," the focus should be on the factual allegations contained in the EEOC charge itself. Deravin, 335 F.3d at 201; see also Williams, 458 F.3d at 70 (accord). "The central question is whether the complaint filed with the

EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'"
Williams, 458 F.3d at 70 (citing Deravin, 335 F.3d at 202).

Since exhaustion is an affirmative defense, see Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001), the defendant bears the burden of establishing the plaintiff's failure to timely exhaust his administrative remedies. See Khadaroo v. New York Presbyterian Hosp., No. 10 Civ. 1237(CM)(RLE), 2012 WL 893180 (S.D.N.Y. Mar. 15, 2012) (citing Jafri v. Rosenfeld, No. 04 Civ. 2457(JCF), 2005 WL 991784 (S.D.N.Y. Apr. 26, 2005)); German v. Pena, 88 F. Supp. 2d 216, 219-20 (S.D.N.Y. 2000).

Plaintiff did not specifically assert in the EEOC charge that he ever requested defendant to reasonably accommodate his disability by hiring him for the senior paralegal position, or either of the two (2) technical clerk positions, or that defendant's failure to hire him for those positions was in any way based upon his disability. Accordingly, plaintiff may only pursue his ADA claims based upon defendant's failure to hire him for the senior paralegal position (second claim for relief), or either of the technical clerk positions (third claim for relief), if those claims are "reasonably related" to the claims plaintiff did assert in the EEOC charge.

In his EEOC charge, plaintiff clearly asserted a claim that defendant violated the ADA by refusing to reasonably accommodate his disability by permitting him to work in a sedentary position. In addition, plaintiff alleges that the EEOC found, *inter alia*, that defendant violated the ADA by "failing to consider [him] for the second Technical Clerk position or even notify him that the position existed." (Compl., ¶ 43). Assuming the truth of that allegation, the EEOC evidently investigated plaintiff's claims that defendant's failure to hire him for certain positions was discriminatory based upon his disability in violation of the ADA. Since plaintiff's second

17

and third claims for relief fell within the scope of the EEOC investigation, they are exhausted as "reasonably related" to the claims set forth in the EEOC charge. Accordingly, the branch of defendant's motion seeking dismissal of plaintiff's second and third claims for failure to exhaust administrative remedies is denied.

     3.     Claim based upon Defendant's Failure to Notify Plaintiff about the Second Technical Clerk Position

Defendant contends that plaintiff's purported claim that it violated the ADA by failing to notify him that a second technical clerk position had been posted fails to state a claim upon which relief may be granted because the ADA only requires that reasonable accommodations be given to individuals with disabilities, not that they be given preferential treatment. However, plaintiff's ADA claim based upon the refusal to hire him for either of the two (2) technical clerk positions (third claim for relief) alleges only that defendant violated the ADA by refusing to reasonably accommodate his disability by hiring him into either of the two (2) technical clerk positions. (Compl., ¶ 58). Plaintiff does not allege in his complaint that defendant's failure to inform him that a second technical clerk position was posted constituted unlawful discrimination based upon his disability in violation of the ADA[4], and does not seek leave to amend his complaint to re-plead his third claim for relief, (see Plf. Mem., at 23-24).

---

[4] In contrast, in his Title VII gender discrimination claim (seventh claim for relief), plaintiff specifically alleges that by "failing to inform [him] of an opening for a second Technical Clerk[] position, defendant * * * acted in accordance with a practice and pattern of hiring predominantly females as support staff in its Trial Division Offices." (Compl., ¶ 84).

C.    NYSHRL Claims

Section 297(9) of the NYSHRL provides, in pertinent part, as follows:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall
> have a cause of action in any court of appropriate jurisdiction for damages * * *
> and such other remedies as may be appropriate, * * *, unless such person had filed
> a complaint hereunder or with any local commission on human rights, * * *.  At
> any time prior to a hearing before a hearing examiner, a person who has a
> complaint pending at the division may request that the division dismiss the
> complaint and annul his or her election of remedies so that the human rights law
> claim may be pursued in court, and the division may, upon such request, dismiss
> the complaint on the grounds that such person's election of an administrative
> remedy is annulled. Notwithstanding subdivision (a) of section two hundred four
> of the civil practice law and rules, if a complaint is so annulled by the division,
> upon the request of the party bringing such complaint before the division, such
> party's rights to bring such cause of action before a court of appropriate
> jurisdiction shall be limited by the statute of limitations in effect in such court at
> the time the complaint was initially filed with the division. * * * A complaint filed
> by the equal employment opportunity commission to comply with the
> requirements of 42 USC 2000e-5(c)[5] and 42 USC 12117(a) * * * shall not
> constitute the filing of a complaint within the meaning of this subdivision. No
> person who has initiated any action in a court of competent jurisdiction or who
> has an action pending before any administrative agency under any other law of the
> state based upon an act which would be an unlawful discriminatory practice under
> this article, may file a complaint with respect to the same grievance under this
> section * * *."

N.Y. Exec. Law § 297(9).  Thus, under New York's election of remedies statute, "when an

aggrieved party chooses to file a claim before the [NYSDHR], the complainant is generally

foreclosed from seeking redress elsewhere while the claim is pending." Freudenthal v. County of

---

[5]  42 U.S.C. § 2000e-5(c) provides, in pertinent part, as follows:

> "In the case of an alleged unlawful employment practice occurring in a [deferral
> State, such as New York] * * *, no charge may be filed under * * *[42 U.S.C. §
> 2000e-5(b)] by the person aggrieved before the expiration of sixty days after
> proceedings have been commenced under the State or local law, unless such
> proceedings have been earlier terminated, * * *."

Nassau, 99 N.Y.2d 285, 290, 755 N.Y.S.2d 56, 784 N.E.2d 1165 (N.Y. 2003); see York v. Association of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002). However, a complainant does not elect an administrative remedy within the meaning of New York's election of remedies statute, and retains the right to commence an action in court, if he files a charge with the EEOC, which then forwards it to the NYSDHR for filing. Barr v. BJ's Wholesale Club, Inc., 62 A.D.3d 820, 821, 879 N.Y.S.2d 558 (2d Dept. 2009); Hirsch v. Morgan Stanley & Co., Inc., 239 A.D.2d 466, 467, 657 N.Y.S.2d 448 (2d Dept. 1997). Since plaintiff did not file a complaint with the NYSDHR pursuant to New York Executive Law § 297, his right to commence an action in court is limited not by the election of remedies provision, but by the applicable statute of limitations.

Claims under the NYSHRL are subject to a three (3)-year statute of limitations, see Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997); Murphy v. American Home Products Corp., 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 448 N.E.2d 86 (N.Y. 1983) ("[T]he institution of civil actions to recover damages for unlawful discriminatory practices under [the NYSHRL] is governed by the three year period of limitations prescribed in [N.Y.] CPLR 214 (subdiv. 2) * * *."), and accrue "on the date that an adverse employment determination is made and communicated to [the] plaintiff * * *." Pinder v. City of New York, 49 A.D.3d 280, 281, 853 N.Y.S.2d 312 (1st Dept. 2008); see also Milani v. International Business Machines Corp., Inc., 322 F.Supp.2d 434, 451 (S.D.N.Y. 2004). However, the statute of limitations for claims under the NYSHRL is subject to tolling pursuant to Section 204(a) of the New York Civil Practice Law and Rules which provides that "[w]here the commencement of an action has been stayed by * * * statutory prohibition, the duration of the stay is not a part of the time within

20

which the action must be commenced." Accordingly, courts in this Circuit have held that the three (3)-year limitations period for NYSHRL claims "is tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter." DeNigris, — F.Supp.2d —, 2012 WL 955382, at * 5 (S.D.N.Y. Mar. 9, 2012); see also Ezuma v. City University of New York, 665 F.Supp.2d 116, 119 (E.D.N.Y. 2009), aff'd, 367 Fed. Appx. 178 (2d Cir. 2010) (holding that the statute of limitations on a claim under the NYSHRL is tolled during the period in which a complaint is filed with the EEOC); Sundaram v. Brookhaven National Laboratories, 424 F.Supp.2d 545, 565 (E.D.N.Y. 2006) ("Because complaints filed with the EEOC are deemed constructively to be cross-filed with the NYDHR, the statute [of limitations] is also tolled [pursuant to N.Y. C.P.L.R. § 204(a)] during the pendency of a claim filed with the EEOC.")

Plaintiff filed his complaint on January 14, 2011. Plaintiff was notified that defendant denied his request to accommodate his disability by assigning him to a sedentary position or modifying his job duties in the claims department by letter dated January 22, 2008. Moreover, although plaintiff applied for the first technical clerk position on January 4, 2008, it is at least arguable that he was not notified that he had not been hired for either of the two (2) technical clerk positions until February 4, 2008, when the first posting for that position was cancelled. Thus, plaintiff's NYSHRL claims based upon those acts (eighth and tenth claims for relief) are, or appear at this stage of the proceeding to be, timely.

However, plaintiff was notified no later than December 14, 2007, when he sent an e-mail to Romulus, that he had not been hired for the senior paralegal position; knew as of November 13, 2007 that he had exhausted his leave; complained of retaliation based upon allegations that

21

defendant "(1) appl[ied] a hypertechnical review of his qualifications [for the senior paralegal position]; (2) post[ed] an inaccurate description for the Senior Paralegal position; [and] (3) stonewall[ed] his requests for an accommodation by repeatedly requiring plaintiff to obtain additional information from his doctor * * *," by e-mail dated December 20, 2007; and knew that he had not received "a substantive response" to the December 20, 2007 e-mail shortly thereafter. Thus, unless the limitations periods applicable to those NYSHRL claims were tolled, plaintiff's claims alleging discrimination based upon defendant's failure to hire plaintiff for the senior paralegal position (ninth and thirteenth claims for relief) and failure to afford plaintiff the opportunity to request and receive additional leave time (eleventh claim for relief), and retaliation (twelfth claim for relief), with the exception of his claim that the termination of his employment was retaliatory, must have been commenced by December 14, 2010, November 13, 2010 and December 20, 2010, or shortly thereafter, respectively. Since, as set forth above, plaintiff did not file a timely charge with the EEOC with respect to his ADA and Title VII claims based upon his allegations of discrimination relating to the failure to hire him for the senior paralegal position and failure to afford him the opportunity to request and receive additional leave, and retaliation, with the exception of his claim that the termination of his employment was retaliatory, Section 204(a) of the New York Criminal Practice Law and Rules is inapplicable to toll the statute of limitations applicable to those claims. See, e.g. Polakoff v. St. Lawrence University, No. 95-cv-1660,1996 WL 481552, at * 5 (N.D.N.Y. Aug. 19, 1996) (finding that since the EEOC was not asserted against a particular defendant, there was never any administrative charge pending against hin and, thus, N.Y. C.P.L.R. § 204(a) was inapplicable because there was no statutory bar preventing the plaintiff from proceeding in court against that defendant). Accordingly, the

22

branch of defendant's motion seeking dismissal of plaintiff's ninth, eleventh, twelfth and thirteenth claims for relief is granted to the extent that plaintiff's ninth, eleventh and thirteenth claims for relief are dismissed in their entirety, and plaintiff's twelfth claim for relief is dismissed in its entirety with the exception of his claim that the termination of his employment was retaliatory, as time barred.

III.    Conclusion

For the reasons set forth above, defendant's motion seeking dismissal of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent that plaintiff's (a) second, fourth, sixth, ninth, eleventh and thirteenth claims for relief are dismissed in their entirety with prejudice, (b) fifth and twelfth claims for relief are dismissed in their entirety with prejudice, except insofar as those claims allege that plaintiff's termination was retaliatory, and (c) first claim for relief is dismissed to the extent it is based upon acts occurring prior to January 7, 2008, as time-barred, and defendant's motion is otherwise denied.[6] The parties are directed to appear, with authority or with individuals with authority to settle this

---

[6] For the sake of clarity, the following causes of action remain: (1) plaintiff's ADA and NYSHRL claims alleging that defendant failed to reasonably accommodate his disability by not permitting him to work a modified or sedentary assignment in the claims department, to the extent the discrete acts of discrimination occurred on or after January 7, 2008 (first and eighth claims for relief, respectively); (2) plaintiff's ADA, Title VII and NYSHRL claims alleging that defendant refused to reasonably accommodate his disability and/or discriminated against him based upon his gender, by not hiring him into either of the technical clerk positions (third, seventh and tenth claims for relief, respectively); and (3) plaintiff's ADA and NYSHRL claims alleging that the termination of his employment was retaliatory (fifth and twelfth claims for relief, respectively).

23

matter, in my courtroom located at 1010 Federal Plaza, Central Islip, New York, **on September 27, 2012 at 11:15 a.m.** for an initial conference before me.

SO ORDERED.

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: September 4, 2012